Sterling Midland Coal Company v. Commissioner.
Sterling Midland Coal Co. v. Commissioner
Docket No. 104390.
United States Tax Court
1943 Tax Ct. Memo LEXIS 515; 1 T.C.M. (CCH) 388; T.C.M. (RIA) 43025; January 9, 1943
*515 Henry Adamson, Esq., 409 Star Bldg., Terre Haute, Ind., and Lloyd C. Adamson, Esq., 409 Star Bldg., Terre Haute, Ind., for the petitioner. Edward C. Adams, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined income tax and excess profits tax deficiencies against the petitioner for the calendar year 1936 in the respective amounts of $8,926.08 and $376.88. The only issue is whether the petitioner is entitled to a deduction for loss in respect of certain mineral rights. Findings of Fact The petitioner, an Illinois corporation, is engaged in the coal business. Its principal office is in Chicago and its main operating office in Terre Haute, Indiana. Its income tax return for the calendar year 1936 was filed with the collector for the first district of Illinois. From 1920 to 1922 the petitioner expended $180,000 in advertising "Glendora Coal" and upon learning in 1922 that other parties were securing acreage in the Glendora field, W. J. O'Brien, president of petitioner, suggested to W. Paul Zimmerman, president of Zimmerman Coal Company, that the two companies pool their interests in acquiring mineral rights in Sullivan *516 County, Indiana, which was in the Glendora field. A joint venture was accordingly agreed upon with the Zimmerman Coal Company having an interest of 50 percent, petitioner an interest of 25 percent and J. A. Templeton, individually, an interest of 25 percent. Title to the mineral rights acquired under this arrangement was taken in the names of trustees, the trustees being Paul Zimmerman and J. B. Mershon. The Zimmerman Coal Company advanced the money used in acquiring the acreage and was to be reimbursed by its co-adventuresr according to their interests. Under the above arrangement mineral rights in Sullivan County were procured from time to time during the period extending from May 1922 through 1926. The Zimmerman Coal Company paid the taxes on the joint venture holdings until about 1930 when because of the slowness of the other parties in paying their part it discontinued tax payments. Zimmerman Coal Company was financially able to pay the taxes on the properties but during that time the petitioner was insolvent. The properties listed in the name of J. B. Mershon, trustee, were advertised for sale for taxes, penalties, etc., by the auditor of Sullivan County in the years 1932, *517 1934, 1935, 1936, 1937 and 1938, but no bids were received therefor until the year 1938. On April 12, 1938, the said properties were sold at a tax sale for the sum of $5. At the time of the sale the unpaid taxes and penalties standing against the properties were $2,027 and $310.59, respectively. The properties listed in the name of W. Paul Zimmerman were advertised for sale for taxes, etc., by the auditor of Sullivan County for the years 1932 and 1934 to 1939 inclusive but no bids were received therefor. On July 16, 1940, however, the properties were sold at a tax sale for $7.40. At the time of the sale the unpaid taxes and penalties standing against the properties were $1,433.57 and $316.28, respectively. The records of the treasurer of Sullivan County show that on May 2, 1938, $19.08 was paid on the taxes on Mershon properties and that a credit of $5 was entered against the taxes on the Zimmerman properties under date of April 12, 1938. At the time the mineral rights were acquired the hand method of loading coal in shaft mines was in vogue in Indiana. A gradual change from the hand loading method to the mechanical method began to take place and by 1935 it had become a financial *518 and economic impossibility for a hand loading mine to compete with a mechanical loading mine. The coal seam in the joint venture holdings was on an average four feet or less in thickness and was not of sufficient thickness for practical or economical operation by the mechanical loading method. No shaft was ever sunk and no mining was ever done on the joint venture properties by the said joint venture or any of the interested parties. In 1935 the Templeton Coal Company, using the mechanical loading method, was operating in the same seam of coal as that held by the joint venture but approximately one-half mile north of the joint venture field. The operations of the Templeton Coal Company were toward the holdings of the joint venture to the south and as operations continued south in this mine the seam of coal became thinner until it reached the point where it could no longer be profitably mined. Operations in that direction were discontinued by the Templeton Coal Company in 1935. Charles N. Templeton, son of John A. Templeton, was president of the Templeton Coal Company and had been president of the petitioner since 1926. John A. Templeton died April 26, 1935, and upon his death Charles *519 N. Templeton learned of the claim of the Zimmerman Coal Company to the effect that additional amounts were due for monies which it, Zimmerman Coal Company, had advanced in acquiring mineral rights for the joint venture. There had been a controversy as to the amounts which had been paid and which were owing by the various parties to the joint venture. Charles N. Templeton thereupon examined various records pertaining to the joint venture mineral rights including the logs of holes that had been drilled. Thereafter and under date of June 9, 1936, an agreement was signed by and for the proper parties to the joint venture, including the petitioner, wherein the liability of the petitioner to the Zimmerman Coal Company was fixed at $4,100 and it was further agreed and understood that the said joint venture was thereby terminated. The $4,100 was paid by petitioner to the Zimmerman Coal Company in 1936 and at the direction of Charles N. Templeton petitioner's investment in the mineral rights which had been acquired by the joint venture were written off its books. Prior to 1936 petitioner had paid on the mineral rights of the joint venture a total of $23,753.86 which with the $4,100 made a *520 total investment of $27,853.86. On its income tax return for 1936 the petitioner deducted as a loss $27,853.86, the entire amount of its investment in the joint venture mineral rights. In determining the deficiencies herein the deduction so claimed was disallowed by the respondent. The mineral rights of the joint venture were worthless prior to 1936. Opinion The only question is whether petitioner's loss in respect of the Sullivan County mineral rights is deductible in 1936, as claimed. The respondent concedes that the $4,100 paid by petitioner to Zimmerman Coal Company in 1936 is deductible for that year, leaving in issue the balance of petitioner's investment, or $23,753.86. Losses are deductible only for the year in which they are sustained. Section 23 (f) of the Revenue Act of 1936; Jessie S. Meachem, 22 B.T.A. 1091; J. C. Hawkins, 34 B.T.A. 918; affd., 91 Fed. (2d) 354. The facts of record show that the mineral rights in question lost any and such value as they may have had upon the advent in the Indiana coal fields of the mechanical method of loading coal as compared with the hand *521 loading method and that by 1935 it was financially and economically impossible for a hand loading mine to compete with mechanical loading shaft mines. Charles N. Templeton, petitioner's president and witness, not only testified that the mineral rights were worthless in 1936, but on cross-examination, further stated that their value was no different in 1934 and 1935. On such state of the record it may not be said that petitioner's loss in respect of the mineral rights was sustained in 1936. See and compare Commissioner v. McCarthy, 129 Fed. (2d) 84. The settling of the account between the co-adventures, the agreement between them to abandon the joint venture and the writing off by petitioner of its investment therein all of which occurred in 1936 are not, in the light of other facts of the record, indicative of the date when the loss was sustained. Decision will be entered under Rule 50.